**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**
**EASTERN DIVISION**

**FELICIA ANN JACKSON and WILLIE ASHFORD,**
**the wrongful death heirs of MINNIE ASHFORD** **PLAINTIFFS**

**V.** **CIVIL ACTION NO. 1:10-CV-88-SA-DAS**

**OKTIBBEHA COUNTY HOSPITAL** **DEFENDANT**

**MEMORANDUM OPINION**

Plaintiffs Felicia Ann Jackson and Willie Ashford commenced this action for the alleged wrongful death of their mother, Minnie Ashford (Ms. Ashford). Presently before the Court is a Motion for Summary Judgment [23] filed by Defendant Oktibbeha County Hospital (OCH). For the following reasons, the Court grants the motion.

**BACKGROUND FACTS**

On October 3, 2008, Ms. Ashford, an African-American female, was admitted to the OCH Intensive Care Unit in Starkville, Mississippi, after she was discovered lying in a pool of blood. Ms. Ashford suffered from serious health problems, including anemia caused by loss of blood, cancer, acute kidney failure, diabetes, and high blood pressure. Ms. Ashford had previously suffered a stroke, leaving her unable to talk and partially paralyzed. Prior to her admission, Ms. Ashford had been cared for by her daughter Felicia, and she did not have any bedsores or decubitus ulcers.

According to the plan of care developed by OCH, Ms. Ashford was at a high risk of developing bedsores, and was to be repositioned every two hours. However, according to Plaintiffs, the medical records indicate that this did not occur, and Ms. Ashford was only repositioned sporadically at best. By October 8, the medical records indicate that Ms. Ashford had developed

bedsores. On October 15, 2008, Ms. Ashford was discharged after undergoing surgery for cancer of the bladder. After her discharge, her family discovered the bedsores, and Ms. Ashford was readmitted to the hospital two days later. Ms. Ashford died of cardiopulmonary arrest on October 21, 2008.

## PROCEDURAL HISTORY

On April 19, 2010, Plaintiffs filed this wrongful death suit against Defendant OCH, alleging state law negligence claims and federal claims under 42 U.S.C. § 2000d, 42 U.S.C. § 1983, and the Rehabilitation Act of 1973. The Plaintiffs assert, inter alia, that due to the negligence of OCH, Ms. Ashford developed bedsores which later contributed to her death. The Complaint also asserts that OCH denied Ms. Ashford care due to her race and disability.

The record in this case reveals a troubling lack of diligence on the part of Plaintiffs' counsel. The Court's Case Management Order imposed the following deadlines: Plaintiffs were to designate their expert(s) by March 29, 2011; discovery was to be completed by June 13, 2011; and all dispositive motions were due no later than June 27, 2011. It is not apparent from the Court's docket that Plaintiffs conducted any discovery. Plaintiffs failed to designate an expert and also failed to respond to Defendant's discovery requests, including its requests for admissions. On June 15, 2011, Defendant OCH filed a Motion for Summary Judgment [23]. Plaintiffs sought and were granted an extension of time until July 8, 2011, to file their response. However, Plaintiffs failed to respond within that time period. On July 25, 2011, Plaintiffs filed their response contemporaneously with a request for a retroactive enlargement of time to respond, which the Court granted. After due

consideration of the motion, response, exhibits, and supporting authority, the Court is ready to rule.[1]

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Wash. Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1).

## DISCUSSION

A. Medical Malpractice / Medical Negligence

Under Mississippi Law, the essential elements of a medical-malpractice claim are: (1) the existence of a duty on the part of a physician to conform to the specific standard of conduct, (2) the applicable standard of care, (3) the failure to perform to that standard, (4) that the breach of duty by the physician was the proximate cause of the plaintiff's injury, and (5) that damages to the plaintiff

[1] On July 26, 2011, Plaintiffs filed a Motion to Withdraw Admissions [30]. However, because the Court finds that Defendant is entitled to summary judgment without regard to Plaintiffs' admissions, the Court need not consider the motion.

resulted. Patterson v. Tibbs, 60 So. 3d 742, 753 (Miss. 2011) (citations omitted). A plaintiff must present competent expert testimony as to the applicable standard of care, breach thereof, and proximate causation. Hubbard v. Wansley, 954 So. 2d 951, 956-57 (Miss. 2007); see also Kuiper v. Tarnabine, 20 So. 3d 658, 661 (Miss. 2009) ("The general rule is that the negligence of a physician may be established only by expert testimony."); McCaffrey v. Puckett, 784 So. 2d 197, 206 (Miss. 2001) ("Mississippi case law demands that in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care."). Accordingly, "in a medical-malpractice action, expert testimony is generally required to survive summary judgment." Kuiper, 20 So. 3d at 661.

Here, Plaintiffs have failed to designate an expert. Therefore, Defendant argues, Plaintiffs cannot establish any of the elements of a medical negligence claim, and summary judgment is proper. The Court agrees. Although Plaintiffs advance several arguments to the contrary, under established Mississippi precedent, Plaintiffs' claims must fail as a matter of law.

First, the Plaintiffs contend that liability can be established without expert testimony through the doctrine of res ipsa loquitur. The doctrine of res ipsa loquitur operates as an exception to the general rule that medical negligence can only be established by expert testimony, and is applicable in "instances where a layman can observe and understand the negligence as a matter of common sense and practical experience." Winters v. Wright, 869 So. 2d 357, 363 (Miss. 2003) (quoting Coleman v. Rice, 706 So. 2d 696, 698 (Miss. 1997)). The doctrine requires three elements: (1) the instrumentality causing the injury must be under the control and management of the defendant; (2) the injury must be such that in the ordinary course of things it would not occur if those in control of the instrumentality used proper care; (3) the injury must not be due to any voluntary act by the plaintiff. Id. (citing Coleman, 706 So. 2d at 698). However, "[a] jury may not presume negligence

because of the untoward results of surgery," and "the use of res ipsa loquitur should be cautiously applied." Id. Generally, the doctrine has been applied in cases where a foreign object, such as a surgical instrument, is left in a patient's body. See Coleman, 706 So. 2d at 698 (discussing cases).

Here, neither this Court, nor the average layperson knows, "as a matter of common sense and practical experience," whether bedsores of the type developed by the decedent would ordinarily not occur in the absence of negligence. Furthermore, OCH has provided un-rebutted expert testimony that such bed sores may be unavoidable in patients in Ms. Ashford's condition, and can and do occur even when entirely appropriate nursing care is provided. Res ipsa loquitur applies "only when the accident is such that, according to ordinary human experience, it could not have happened without such negligence; from which it follows that the doctrine does not apply when, upon the whole case, there has been specific proof which discloses some reasonable explanation for the happening other than the negligence charged against the defendant." Winters, 869 So. 2d at 364 (quoting Yazoo & M.V.R. Co. v. Skaggs, 181 Miss. 150, 179 So. 274, 277 (1938)). Therefore, the Court finds the doctrine of res ipsa loquitur is inapplicable to this case.

Plaintiffs reliance on Hale v. Holy Cross Hospital, Inc., 513 F.2d 315 (5th Cir. 1975) and Lawson v. Dallas County, 286 F.3d 257 (5th Cir. 2002) is misplaced. In Hale, the Fifth Circuit, applying Florida law, found that the doctrine of res ipsa loquitur was applicable where a heating pad left on a patient allegedly caused third degree burns on his buttocks. Hale, 513 F.2d at 318. There is no allegation here that an instrumentality such as a heating pad caused Ms. Ashford's injuries. Instead, the Plaintiffs theory is that Ms. Ashford developed bed sores because she was not turned often enough. Whether a patient would not ordinarily suffer third degree burns from a heating pad in the absence of negligence is a very different question than whether a patient in Ms. Ashford's condition would not ordinarily suffer bed sores in the absence of negligent care. Therefore, Hale

is of no help to Plaintiffs.

Plaintiffs next seize on the following language from Lawson v. Dallas County, wherein the Fifth Circuit stated: "The district court found that it is common medical knowledge that a paraplegic who is not properly cared for is at a substantial risk of developing serious, even life-threatening decubitus ulcers. This is not in dispute." Lawson, 286 F.3d at 262. Plaintiffs argue that Ms. Ashford's condition is substantially similar to a paraplegic and required the same of similar care as a paraplegic. However, this Court, unlike the district court in Lawson,[2] has not been presented with any such evidence. More importantly, whether something may or may not be within the common knowledge of medical professionals is not the standard for res ipsa loquitur and does not relieve the Plaintiffs of their obligation to provide expert testimony establishing such.

Plaintiffs next argue that the standard of care may be ascertained, and a breach thereof inferred, from the decedent's medical records. In particular, Plaintiffs assert that the "OCH plan of care/assessment of Minnie Ashford was that she was to be turned every two hours." Plaintiffs assert that this did not occur. Plaintiffs argue that "the records constitute an admission of breach of the plan of care from which the standard of care may be inferred." A provider of medical care is negligent only when the care or treatment provided falls below the minimal level of care which a competent professional would provide. Starcher v. Byrne, 687 So. 2d 737, 740 (Miss. 1997). Plaintiffs have cited no authority for the proposition that the standard of care can be established through a hospital's plan of care. To the contrary, Mississippi case law provides that the standard of care in a medical malpractice action can only be established through expert testimony. Plaintiffs

[2]In Lawson, the plaintiff claimed deliberate indifference by medical personnel employed by Dallas County, and the district court denied the defendant's motion for summary judgment based on "testimonies given by the doctors and nurses in this case who have years of medical experience." Lawson v. Dallas Cnty., 1998 WL 246642 at *7 (N.D. Tex. Mar. 24, 1998).

have failed to provide such testimony, and this argument is unavailing.

Next, the Plaintiffs ask the Court to take judicial notice of the applicable standard of care as (Plaintiffs contend) is embodied in guidelines promulgated by the Agency for Health Care Policy and Research (AHCPR). However, Plaintiffs cite no authority holding that taking judicial notice of a medical standard of care is permissible. To allow otherwise would circumvent well-established precedent holding that the standard of care may only be established by expert testimony. Furthermore, the applicable standard of medical care in this case is not an "adjudicative fact" subject to judicial notice as contemplated by Federal Rule of Evidence 201. The rule provides that "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). Therefore, the Court declines to take judicial notice that AHCPR guidelines establish the standard of care.

Plaintiffs next assert, without supporting authority, that "[Defendant] assumed the risk of strict liability by blatantly disregarding the plan of care/standard of care for Minnie Ashford based on her status as high to severe risk for the development of bedsores." As the Court has not been provided with any authority supporting the proposition that a hospital may become strictly liable for its patient's outcomes in this manner, the Court does not find this argument well taken.

Even if Plaintiffs had established the standard of care and a breach thereof, they have still failed to provide any expert testimony establishing that such breach was the proximate cause of any injury to Mrs. Ashford or was the proximate cause of Mrs. Ashford's death.[3] Plaintiffs cite

---

[3]Plaintiffs contend they are pursuing both a wrongful death claim and a survival claim.

Richardson v. Methodist Hospital of Hattiesburg, 807 So. 2d 1244 (Miss. 2002), for the proposition that "expert testimony by a medical doctor [is not required] to establish the cause of death." While this is technically true, the court in Richardson made this observation while discussing a prior case, Sonford Products Corp. v. Freels, 495 So. 2d 468 (Miss. 1986), in which the Mississippi Supreme Court held that a toxicologist should have been able to render expert testimony that prolonged exposure to toxic chemicals caused injury and death to a workers' compensation claimant. Richardson, 807 So. 2d at 1248. The Court does not read Richardson as dispensing with the requirement that a plaintiff must offer some sort of expert testimony—albeit not necessarily from a medical doctor—to establish cause of death.[4]

Plaintiffs next request leave of Court to retain an expert for the purpose of establishing the proximate cause of Ms. Ashford's death. That request will be denied both as being grossly untimely and procedurally improper. See L.U. Civ. R. 7.

Plaintiffs next argue that, pursuant to Mississippi Code Section 11-1-69, they may seek recovery for damages for pain, suffering, and loss of enjoyment of life suffered by Ms. Ashford without the necessity of an expert witness. Section 11-1-69 provides:

> (1) In any civil action for personal injury there may be a recovery for pain and suffering and loss of enjoyment of life. However, there shall be no recovery for loss of enjoyment of life as a separate element of damages apart from pain and suffering damages, and there shall be no instruction given to the jury which separates loss of enjoyment of life from pain and suffering. *The determination of the existence and extent of recovery for pain and suffering and loss of enjoyment of life shall be a question for the finder of fact, subject to appellate review, and the monetary value of the pain and suffering and loss of enjoyment of life shall not be made the subject of expert testimony.*

[4]In fact, the Richardson court affirmed the trial court's grant of summary judgment as to a wrongful death claim on the basis that the plaintiffs' designated expert, a registered nurse, was not qualified to offer an opinion regarding the decedent's cause of death. Id. at 1245, 1248.

MISS. CODE. ANN. § 11-1-69 (emphasis added). However, this statute does not dispense with the requirement of expert testimony to establish duty, breach and causation in medical negligence cases. Therefore, this argument lacks merit. Similarly unavailing is the Plaintiffs' argument that even if the plaintiff cannot establish that the death of Ms. Ashford was caused by the bed sores, the medical records still establish the pain endured Ms. Ashford. This may be true, but—in the absence of expert testimony establishing duty, breach, and causation—is insufficient to establish a viable claim against the Defendant.

In conclusion, because of the absence of expert testimony establishing the standard of care, or that Defendant's actions constituted a breach thereof, or that such breach proximately caused Ms. Ashford's injuries, the Defendant is entitled to summary judgment on this claim.

B. Federal Claims

Defendant asserts that Plaintiffs' claims under 42 U.S.C. § 1983, Title VI of the Civil Rights Act (42 U.S.C. § 2000d et seq.) and Section 504 of the Rehabilitation Act (29 U.S.C. § 794) fail as a matter of law because the Plaintiffs have not adduced any evidence of a discriminatory motive on the part of OCH. The Court agrees.

1. 42 U.S.C. § 2000(d) and 42 U.S.C. § 1983

Plaintiffs appear to concede their claims under 42 U.S.C. § 2000(d) and 42 U.S.C. § 1983. In their response, Plaintiffs state: "The plaintiff herein voluntarily dismisses 42 USCS 2000(d) and 42 USCS 1981 claims based upon race." However, the Complaint does not contain a 42 U.S.C. § 1981 claim. The Court presumes this was a typographical error, and Plaintiffs intended to dismiss their Section 1983 claim. In any event, Plaintiffs have failed to produce any argument or evidence in support their Section 1983 claim and such claim is due to be dismissed.

2. Rehabilitation Act - 29 U.S.C. § 794

The Federal Rehabilitation Act provides that, "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794. To show discrimination under the Rehabilitation Act, a plaintiff must show that: (1) she is a handicapped individual under the Act, (2) that she is otherwise qualified for the benefit sought, (3) that she was discriminated against solely on the basis of her disability, and (4) the program or activity received federal financial assistance. Washburn v. Harvey, 504 F.3d 505, 508-09 (5th Cir. 2007); Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1289, 1300 (11th Cir. 2005). Here, the Plaintiffs are unable to satisfy the second and third elements.

According to Plaintiffs, Ms. Ashford was disabled because she was unable to speak, ambulate or care for herself, and she was "'otherwise qualified' for the full care and treatment of OCH's medical services." The Plaintiffs make a confusing argument that Defendant withheld care from Ms. Ashford in violation of the Rehabilitation Act because, "after the passage of Medicaid's exclusion of payment for bed sores developed while in the hospital, OCH diverted the resources of nurses to other activities which were in fact billable to Medicaid." The sole evidence cited is an "absence of records detailing the presence of bed sores diagnosis and treatment."

Leaving aside the lack of evidentiary support for this claim, a lawsuit under the Rehabilitation Act cannot be based on medical treatment decisions. See e.g. Burger v. Bloomberg, 418 F.3d 882, 883 (8th Cir. 2005); Schiavo, 403 F.3d at 1294 ("Rehabilitation Act . . . was never intended to apply to decisions involving . . . medical treatment"); Fitzgerald v. Correctional Corp. of America, 403 F.3d 1134, 1144 (10th Cir. 2005); Grzan v. Charter Hosp. of Nw. Ind., 104 F.3d 116, 123 (7th Cir. 1997) ("Allegations of discriminatory medical treatment do not fit into the

four-element framework required by section 504."). The second element requires that Ms. Ashford be "otherwise qualified for the benefit sought," meaning that, "absent her disability, she would qualify for the treatment that she was allegedly denied." Schiavo, 403 F.3d at 1300. As the Second Circuit explained in United States v. University Hospital:

> The phrase ["otherwise qualified"] cannot be applied in the comparatively fluid context of medical treatment decisions without distorting its plain meaning. In common parlance, one would not ordinarily think of a newborn infant suffering from multiple birth defects as being "otherwise qualified" to have corrective surgery performed or to have a hospital initiate litigation seeking to override a decision against surgery by the infant's parents. If congress intended section 504 to apply in this manner, it chose strange language indeed.

729 F.2d 144, 156 (2d Cir. 1984). Therefore, Plaintiffs' argument that Ms. Ashford was "otherwise qualified" within the meaning of the act for the medical services she allegedly did not receive is not well taken. Ms. Ashford would not have needed the medical services at issue but for her medical condition. See Schiavo, 403 F.3d at 1294. Plaintiffs attempt to characterize Ms. Ashford's treatment as an administrative decision because of Defendant's alleged financial motivation, relying on Wagner v. Fair Acres Geriatric Center, 49 F.3d 1002 (3rd Cir. 1995). In Wagner, the Third Circuit held that a nursing home's refusal to admit a woman suffering from Alzheimer's was not a medical decision immune from scrutiny under the Rehabilitation Act. Id. at 1011. In doing so, the court distinguished the decision on whether or not to admit the plaintiff from a decision regarding medical treatment, stating "[a] decision of this type, regarding whether an institution can provide certain services without a modification of the essential nature of its program . . . involves administrative-decision making and not medical judgment." Id. at 1012. However, Plaintiffs claims do not involve a refusal to admit Ms. Ashford to the hospital; rather, they center on the care she received after she was admitted. Therefore, the Court finds that Wagner is inapposite.

Equally problematic for Plaintiffs' Rehabilitation Act claim is the complete lack of evidence

that Defendant discriminated against Ms. Ashford or denied her care "solely on the basis of her disability." Plaintiffs simply assert, without further argument as to this element, that: "Minnie Ashford was excluded and denied the benefit of care based upon her ability to move and care for herself, despite the fact that the defendants knew of her need for such services and would have provided for such care notwithstanding her disabling condition." As Plaintiffs have failed to establish a genuine issue of material fact for trial, summary judgment is appropriate as to this claim.

**CONCLUSION**

Defendant's Motion for Summary Judgment is granted, Plaintiffs' claims are dismissed, and this case is closed.

SO ORDERED on this, the 9th day of January, 2012.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**